UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23000-Civ-SEITZ
MAGISTRATE JUDGE P.A. WHITE

CHRISTOPHER GREEN,                    :

    Petitioner,                   :

v.

                                      :       REPORT OF

WALTER A. McNEIL,                         MAGISTRATE JUDGE

                                      :

    Respondent.

_____:

## I. Introduction

Christopher Green, a state prisoner confined at Wakulla Correctional Institution at Crawfordville, Florida, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking his convictions entered in Case No. 04-38658 in the Circuit Court of the Eleventh Judicial Circuit of Florida at Miami-Dade County.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition with supporting documentary exhibits, the Court has the respondent's response to an order to show cause with multiple exhibits, and the petitioner's reply.

## II. Claims

Green raises the following claims for relief:

1.    He received ineffective assistance of appellate counsel, because his lawyer failed to file a motion to correct illegal sentence pursuant to Fla.R.Crim.P. 3.800 on the

basis that his sentence was an unlawful, vindictive sentence and, thereby, preserve the issue for appellate review on direct appeal.

2.  He received ineffective assistance of trial counsel, because his lawyer failed to properly investigate the case and obtain evidence within the state's possession (i.e., a pawn ticket with his fingerprint and signature), and such failure deprived him of testifying as a witness in his own behalf.

3.  He received ineffective assistance of trial counsel, because his lawyer failed to file a motion to suppress statements he made in a letter to the prosecutor.

4.  He received ineffective assistance of trial counsel, because his lawyer failed to object, request a curative instruction and move for a mistrial when the state failed to call lead Detective Spence as a witness at trial.

5.  He received ineffective assistance of trial counsel, because his lawyer failed to file a motion in limine to exclude the admission of collateral crime evidence at trial.

### III. Procedural History

Green was convicted after jury trial of the offense of dealing in stolen property. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 35, 41-3).[1] The trial court sentenced Green to a term of imprisonment of fifteen years. Id. at 38, 40, 44-5. The court further ordered him to pay $600.00 in restitution and a fine in the amount of $10,000. Id. Green prosecuted a direct appeal from his conviction and sentence where he essentially raised the underlying claims presented in this federal petition as grounds one, three and five. Id. at 55-110. The Florida Third District Court of Appeal affirmed the conviction and sentence in a decision issued on November 8, 2008. Id. at 234-35. See also Green v. State, 943 So.2d 252 (Fla. 3 DCA 2006). His motion for rehearing and/or clarification was denied on November 30, 2006. (Respondent's

---

[1]The Respondent's Appendix can be found at DE# 10.

2

Appendix to Response to Petition for Writ of Habeas Corpus at 236-38).

Just shy of one year later, Green returned to the trial court, seeking _pro se_ postconviction relief. He first filed on November 9, 2007, a motion with supporting documentary exhibits pursuant to Fla.R.Crim.P. 3.850, raising the identical grounds of ineffective assistance of trial counsel presented in this federal petition as well as additional grounds not relevant here. _Id_. at 240-292. The state filed a thorough response with attached exhibits, addressing all claims raised and asserting that Green was not entitled to postconviction relief in that his claims were meritless. _Id_. at 293-338. In a written order entered on April 15, 2008, the trial court agreed with the state and summarily denied the motion, finding the claims meritless and refuted by the record. _Id_. at 339. Green took an appeal from the trial court's ruling, filing his notice of appeal with the court on April 25, 2008. _Id_. at 340. The Florida appellate court affirmed the denial of postconviction relief in a _per curiam_ decision without written opinion issued on February 11, 2009, and the mandate issued on March 2, 2009. _Id_. at 341. _See also_ _Green v. State_, 3 So.3d 1262 (Fla. 3 DCA 2009)(table). On March 6, 2009, Green submitted a _pro se_ motion to compel, requesting the appellate court to require the trial court to file various records necessary to properly dispose of his appeal. (Respondent's Supplemental Appendix to Response to Petition for Writ of Habeas Corpus at Ex. C)(DE# 14). On July 9, 2009, he filed a _pro se_ motion to recall the mandate for the purpose of filing a motion for rehearing. (Respondent's Supplemental Appendix to Response to Petition for Writ of Habeas Corpus at Ex. D). The appellate court did not rule on the motion to compel, but denied the motion to recall the mandate on July 15, 2009. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 341).

While the Rule 3.850 proceedings were pending, on July 9, 2008, Green filed in the state appellate court a <u>pro</u> <u>se</u> Petition for Writ of Habeas Corpus with attached exhibits, alleging that he received ineffective assistance of appellate counsel in that his lawyer failed to timely file a motion pursuant to <u>Fla.R.Crim.P</u>. 3.800(b)(2) in the trial court to present and preserve a challenge to his sentence as unlawfully vindictive (ground one of the instant petition). <u>Id</u>. 342-431. On August 4, 2008, the Florida Third District Court of Appeal denied the petition without explanation and the case was disposed of without mandate on September 4, 2008. <u>Id</u>. at 433. <u>See also</u> <u>Green v. State</u>, 990 So.2d 1073 (Fla. 3 DCA 2008)(table). More than two-months after all state court proceedings had concluded, Green filed in this Court on September 28, 2009,[2] the instant <u>pro</u> <u>se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.

## IV. <u>Statute of Limitations</u>

The respondent in his response to the order to show cause solely asserts that the instant petition should be dismissed as time-barred pursuant to 28 U.S.C. §2244(d). For the reasons stated below, the undersigned disagrees with the respondent's argument.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner must generally file his §2254 petition within one year from the date that his conviction became final by the conclusion of direct review or the expiration of the time for

---

[2]This Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." <u>Alexander v. Sec'y Dep't of Corr.</u>, 523 F.3d 1291, 1294 n. 4 (11 Cir. 2008). <u>See also</u> <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999)(prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

seeking such review. _See_ 28 U.S.C. §2244(d)(1)(A);[3] _Jimenez v. Quarterman_, 555 U.S. ___, ___, 129 S.Ct. 681, 685-86, 172 L.Ed.2d 475 (2009)(explaining the rules for calculating the one-year period under §2244(d)(1)(A)). This period is tolled while a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending.[4] 28 U.S.C. §2244(d)(2). Besides statutory tolling, the one-year limitations period is subject to equitable tolling in appropriate cases. _Holland v. Florida_, 560 U.S. ___, 2010 WL 2346549 (June 14, 2010). _See also_ _Pace v. DiGuglielmo_, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)(holding that a petitioner is entitled to equitable tolling only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing); _Helton v. Secretary  for Dept. of Corrections_, 259 F.3d 1310, 1312 (11 Cir. 2001)(stating that "[e]quitable tolling can be applied to

---

[3]The statute provides that the limitations period shall run from the latest of —

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1).

[4]A properly-filed application is defined as one whose "delivery and acceptance are in compliance with the applicable laws and rules governing filings," which generally govern such matters as the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. _Artuz v. Bennett_, 531 U.S. 4 (2000)(_overruling Weekley v. Moore_, 204 F.3d 1083 (11 Cir. 2000)).

prevent the application of the AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition."), <u>cert</u>. <u>denied</u>, 535 U.S. 1080 (2002); <u>Sandvik v. United States</u>, 177 F.3d 1269, 1271 (11 Cir. 1999).

The judgment of conviction and sentence in the instant case became final at the latest on February 28, 2007, ninety days after the Florida Third District Court of Appeal affirmed Green's conviction and sentence on direct appeal. <u>See</u> <u>Jimenez v. Quarterman</u>, 129 S.Ct. at 685; SUP.CT.R. 13(1). As indicated above, Green pursued postconviction challenges to his conviction and sentence in both the state trial and appellate courts. Based upon the record here as set-forth above, the one-year limitation period commenced running on March 1, 2007. From that date, Green waited **253-days**, until, November 9, 2007, before filing in the state trial court his Rule 3.850 motion. The denial of the motion was affirmed on appeal with the mandate issuing on March 2, 2009. Green then waited **122-days** before filing his motion to recall the mandate, which was denied on July 15, 2009. He then filed the instant petition **74-days** later. This gives Green a total of **449-days** of untolled time. The petition is, therefore, 84-days late and was due on July 6, 2009.

In order for this petition to be deemed timely, Green must demonstrate that he is entitled to proceed under one of §2244(d)'s statutory tolling provisions, <u>see</u> §2244(d)(1)(B)-(D), or that he is entitled to equitable tolling of the limitations period. Green has expressly addressed the limitations issue in his form petition with supporting exhibits and in his reply to the respondent's response to the order to show cause. (DE# 1, 12). Green asserts that he never received the appellate court mandate in the state

postconviction appeal and he only learned of it when the prison librarian conducted an internet computer search for him which revealed the information on the Florida Third District Court's website. In support of his assertion that the mandate had not been mailed to him at the prison, Green attaches to his petition an inmate request, requesting copies of his incoming mail log for the months of February and March 2009.  See Inmate Request dated August 14, 2009. (DE# 1). In response to his request, the prison official responded: "Your records show that you did not Receive legal mail from February 09-March 09." See Response to Inmate Request dated August 20, 2009. (DE# 1). Based upon his failure to receive the mandate, Green maintains that he is entitled to equitable tolling from the time the mandate issued on March 2, 2009, until July 1, 2009, when he learned that the mandate had issued, and then statutory tolling pursuant to 28 U.S.C. §2244(d)(2) for the time his motion to recall the mandate was pending (i.e., from July 3, 2009, through July 15, 2009). If Green is awarded the 121-days of equitable tolling and/or the additional 13-days of statutory tolling, the instant petition is timely.

As stated above, a petitioner is entitled to equitable tolling only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. Holland, 560 U.S. ___, ___ S.Ct. at ___, 2010 WL 2346549, *12 (internal quotation marks omitted). Here, the "extraordinary circumstances" at issue involve the 4-month delay in discovering the issuance of the appellate court mandate. This delay may provide a basis for equitable tolling "if the petitioner has diligently attempted to ascertain the status of that order [or here, the mandate] and if the delay prevented the inmate from filing a timely federal habeas corpus petition." Drew v. Dep't of Corrections, 297 F.3d 1278, 1288 (11 Cir. 2002),

7

*citing*, <u>Knight v. Schofield</u>, 292 F.3d 709 (11 Cir. 2002)(holding that a petitioner was entitled to equitable tolling of the AEDPA's statute of limitations because, despite his diligence, he did not learn about the state court's disposition of his state habeas corpus petition until eighteen months after the petition had been denied). <u>See also</u> <u>Woodward v. Williams</u>, 263 F.3d 1135, 1143 (10 Cir. 2001)("[A] prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter."); <u>Phillips v. Donnelly</u>, 216 F.3d 508, 511 (5 Cir. 2000)(holding that a delay in receiving notice of denial of appeal warranted equitable tolling of limitations period to file federal habeas claim when petitioner pursued the process with diligence and alacrity), *rehearing granted in part*, 223 F.3d 797 (5 Cir. 2000). The Eleventh Circuit has cautioned, however, that "not in every case will a prisoner be entitled to equitable tolling until he receives notice. Each case turns on its own facts. <u>Knight</u>, 292 F.3d at 711. In order to invoke equitable tolling and satisfy his burden of demonstrating extraordinary circumstances, a Petitioner must provide evidence that he "repeatedly attempted to ascertain the status of his case from the Clerk's office." <u>See</u> <u>Drew</u>, 297 F.3d at 1288.

This Court finds that Green has satisfied his burden here. The record indicates that Green repeatedly attempted to ascertain the status of his case from the trial and appellate courts from the time that he filed his notice of appeal from the trial court's ruling in the Rule 3.850 motion, April 25, 2008. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 35, 41-3). The notice of appeal was filed in the Florida Third District Court of Appeal on May 30, 2008. <u>Id</u>. at 341. Sometime between the filing of the notice of appeal and August 4, 2008, Green sought

from the trial court copies of various records apparently for the prosecution of his appeal and he received responses to his inquiries that the notice of appeal had been filed on April 25, 2008. See Letter dated August 4, 2008, from Clerk, Miami-Dade County Circuit Court to Green in response to his request/inquiry. (Exhibit attached to Petition)(DE# 1). On or about October 22, 2008, Green inquired about his appeal from the Clerk, Third District Court of Appeal. See Docket Sheet in Green v. State, No. 3D08-1387. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 341).

Less than two months later, on December 1, 2008, Green sent a letter of inquiry with regard to his appeal to the Clerk, Miami-Dade County Circuit Court. (Exhibit attached to Petition). He filed a second notice of inquiry to the Florida appellate court on January 16, 2008. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 341).   On March 2, 2009, the Florida appellate court issued its mandate in the postconviction appeal. Id. On the same date, Green delivered to prison authorities for mailing to the Florida Third District Court of Appeal a pleading entitled, "Motion to Compel Clerk ... to Transmit full & Proper Appeal records." (DE# 14; Ex. C). In the pleading, Green requested the appellate court to order the trial court to transmit the full and proper record to the appellate court pursuant to applicable Rules of Appellate Procedure. Id. The pleading was filed with the appellate court on March 6, 2009.   (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 341). The appellate court took no action whatever on the motion. Id. Green received no legal mail in the months of February and March 2009.[5]

---

[5]It is further noted that telephonic communication on this date with prison officials at Wakulla CI has revealed that the legal mail logs for the months of April, May and June 2009, indicate that Green received no legal mail for those months as well.

Green claims here that after he filed his motion to compel, he requested the prison law librarian to assist him with ascertaining the status of his appeal. See Petitioner's Reply at 3. It was not until approximately July 1, 2009, that the law librarian responded to his request and provided him with a copy of the appellate court docket sheet. Id. at 3-4. He then immediately, on July 3, 2009, delivered to prison authorities for mailing his pleading entitled, "Motion to Recall for Mandate," in which he requested the appellate court to recall the mandate so he could file a motion for rehearing on the basis that he had not received any documents or information indicating that the court had issued its mandate and (Exhibit attached to Petition).

While this Court acknowledges that Green has not provided this Court with an affidavit or other reliable evidence that he did in fact request assistance from the prison law librarian, as he claims, when reviewing the record in its entirety, this Court finds that the record supports Greens contention that he never received notice from the appellate court of the disposition of his appeal. The record further demonstrates that Green acted diligently in attempting to ascertain the status of his appeal from the inception of the appeal. Green has further demonstrated a causal connection between the appellate court's failure to provide him with a copy of the mandate and the untimely filing of his §2254 petition. See Hollinger v. Secretary Dept. of Corrections, 334 Fed.Appx. 302, 2009 WL 1833746 (11 Cir. 2009). When giving him equitable tolling from March 3, 2009, through July 3, 2009 (the date that he filed his motion to compel) and then statutory tolling until July 15, 2009, when the appellate court ruled on his motion to recall the mandate, there are a total of **327** days of untolled time (i.e., **253** days from the time that his conviction and sentence were final until he filed his Rule 3.850 motion and **74** days from the time the

motion to recall mandate was denied until the instant §2254 petition was filed). Consequently, this Court rejects the timeliness attack and dismissal of the petition as time-barred is not appropriate. While Green is entitled to review on the merits of the grounds raised, he is not entitled to habeas corpus relief for the reasons stated immediately below.[6]

## V. <u>Standard of Review</u>

Petitioner filed his petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Post-AEDPA law, therefore, governs this action. <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). It is important to recognize just how limited is this Court's review in a habeas proceeding. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L .No. 104-132, 110 Stat. 1214 (1996), provides that a federal court may not grant the writ unless the state court adjudication on the merits either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable

---

[6]The respondent has not addressed on the merits the claims presented or raised any other procedural defense. Review of the record reveals that the claims now raised have been properly presented to the state courts and are thereby exhausted and are not subject to any procedural bar, as conceded by the respondent. <u>See</u> 28 U.S.C. §2254(b),(c). <u>See also</u> <u>Cone v. Bell</u>, ___ U.S. ___, ___, 129 S.Ct. 1769, 1780 (2009). Accordingly, review on the merits of the claims raised is warranted. Although the respondent has not addressed on the merits the claims presented, the respondent has provided this Court with all pertinent state court documents, including a copy of the trial transcript. Therefore, so as not to further delay disposition of the instant petition, the Court will review on the merits the claims of this petition without requiring a supplemental response from the state.

determination of the facts in light of the evidence presented
in the State court proceeding.

28 U.S.C. §2254(d).

As the United States Supreme Court explained in <u>Williams v.
Taylor</u>, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrives at a conclusion
> opposite to that reached by this Court on a question of law or
> if the state court decides a case differently than this Court
> has on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the
> prisoner's case.

In deciding whether a state court ruling involved an "unreasonable
application" of federal law, this Court does not focus merely upon
whether the state court decision was erroneous or incorrect;
rather, this Court may issue a writ of habeas corpus only if the
state court's application of clearly-established federal law was
objectively unreasonable. _See id_. at 409-11. <u>See also</u> <u>Knowles v.
Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009).

The statutory phrase "clearly established Federal law" "refers
to the holdings, as opposed to the dicta, of [the U.S. Supreme]
Court's decisions as of the time of the relevant state-court
decision." <u>Williams v. Taylor</u>, 529 U.S. at 412, 120 S.Ct. at 1523
(majority opinion by O'Connor, J.). Findings of fact by the state
court are presumed correct, and the petitioner bears the burden of
rebutting that presumption of correctness by clear and convincing
evidence. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Crowe v. Hall</u>, 490 F.3d 840,
844 (11 Cir. 2007), _cert. denied_, 553 U.S. 1007 (2008).

## VI. <u>Discussion</u>

12

Green claims that he received ineffective assistance of trial counsel for five enumerated reasons. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668 (1984). Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. Id. at 688; Heath v. Jones, 941 F.2d 1126, 1130 (11 Cir. 1991). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. A habeas court's review of a claim under the *Strickland* standard is "doubly deferential." Knowles v. Mirzayance, ___ U.S. ___, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009), *citing*, Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." Knowles, 129 S.Ct. at 1420. (citations omitted). Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id.

## (A) Vindictive Sentence

Green claims in **ground one** that his trial lawyer improperly failed to file a motion to correct illegal sentence pursuant to Fla.R.Crim.P. 3.800 on the basis that his sentence was an unlawful, vindictive sentence and, thereby, failed to preserve the issue for appellate review on direct appeal. This claim was raised and rejected as meritless in the state habeas corpus proceeding.

13

The record reveals that on March 22, 2005, the week before the trial had been set to begin, a defense continuance had been granted. However, the following week, trial counsel demanded a speedy trial, at the direction of Green. Despite the prior defense continuance, the trial court granted Green's request and scheduled the trial for that week. See Transcript of proceeding conducted on March 22, 2005, at 3. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 53). Green was facing trial on the instant criminal charge, which carried a maximum sentence of fifteen years, as well as an unrelated life felony. See Trial Transcript at 3.[7] The state had offered Green a term of imprisonment of ten years, to run concurrent to the sentence to be imposed in the then-pending life felony case, in exchange for pleas of guilty to the crimes charged in his two criminal cases. Id. Immediately before trial proceedings commenced on March 29, 2005, trial counsel and the prosecutor informed the court of the plea offer and defense counsel indicated that he was calling no defense witnesses in the instant case. Id. at 3-4. Green was sworn and the trial court then conducted a colloquy with Green, first advising him that there were to be no witnesses presented in his behalf, and then asking him if he in fact wanted to reject the state's offer and proceed to trial. Id. at 4-5. Green indicated that was aware of the state's offer and he did want to proceed to trial on the charge. Id.

The jury returned a verdict of guilty of the offense charged, dealing in stolen property. Id. at 204-05. After the jury had been excused, the state again offered Green a term of confinement of ten years and concurrent term of ten years as to the unrelated armed

---

[7]A copy of the trial transcript can be found at DE# 11.

burglary case where he faced a possible term of imprisonment of life with a ten-year minimum mandatory term. Id. at 208-09. The court advised Green of the state's plea offer and that if he rejected the plea offer he could be sentenced to consecutive terms of imprisonment. Id. at 209. The court further advised Green that, if he rejected the offer, he would most likely receive the maximum term of fifteen years' imprisonment in the instant case, which was supported by the record. Id. at 209-10. Green again rejected the state's offer as to both criminal cases, and the trial court immediately proceeded to sentence Green to the maximum term of imprisonment of fifteen years' imprisonment. Id. at 210-11.

Trial counsel did not lodge an objection to the sentence imposed. Id. Appellate counsel raised as an issue on direct appeal that the sentence imposed was unlawful on the basis of vindictiveness. See Initial Brief of Appellant at 34-48. The state in its Answer Brief first argued that the claim had not been properly preserved for appellate review based upon the lack of a timely objection by trial counsel and/or the failure of counsel to file a Rule 3.800 motion. See Answer Brief of Appellee at 28-36. The state also addressed the claim on the merits and argued that Green was not entitled to relief on his claim. Id. The Florida appellate court affirmed the sentence. Green v. State, 943 So.2d 252 (Fla. 3 DCA 2006) citing, Frazier v. State, 467 So.2d 447 (Fla. 3 DCA 1985), review dism., 475 So.2d 694 (Fla. 1985). In Frazier, the Florida appellate court discussed applicable United States Supreme Court decisions and then held that the greater sentence was not the result of judicial "vindictiveness" against the defendant for inconveniencing the court by asserting his constitutional right to a jury determination of his guilt but, instead, the result of the rejection of the proposed agreement and of the fair conclusion as to his punishment which the court had the consequent ability to

15

render. <u>Frazier</u>, 467 So.2d at 450. In *Frazier*, as was true in the instant case, no further inconvenience could have occurred, since the trial was entirely over when the last plea offer was made and rejected.

Even if this Court were to assume for purposes of this proceeding that trial counsel's performance was deficient for failing to object to the sentence imposed on the basis of vindictiveness and/or for trial or appellate counsel's failure to challenge the sentence in a Rule 3.800 motion,[8] Green cannot satisfy the second-prong of *Strickland*.[9] It is apparent that the state appellate court in the direct appeal proceeding did not agree with the state's procedural argument and, instead, reviewed and rejected the claim raised on the merits. Consequently, Green suffered no prejudice as a result of the alleged deficiency.[10]

Moreover, it is clear that the claim is meritless. As to a sentence imposed after a plea has been rejected, it is well-settled law that a defendant may not be subjected to more severe punishment for exercising his constitutional right to stand trial. <u>Wasman v. United States</u>, 468 U.S. 559, 568 (1984). A finding of judicial bias

---

[8]The two-prong <u>Strickland</u> test is equally applicable in assessing counsel's performance in appellate proceedings. <u>Smith v. Robbins</u>, 528 U.S. 259, 285-86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000)(*Strickland* standard applies to claims alleging ineffective assistance of appellate counsel).

[9]The performance prong of an ineffective assistance claim need not be discussed when no prejudice has been established. <u>See</u> <u>Brown v. Head</u>, 272 F.3d 1308, 1313 (11 Cir. 2001), <u>cert.</u> <u>denied</u>, 537 U.S. 978 (2002).

[10]  The prejudice component of the <u>Strickland</u> test for ineffective assistance of counsel requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. <u>Id</u>. at 693-94. It is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. <u>Id</u>. <u>See also</u> <u>Knowles v. Mirzayance</u>, ____ U.S. ____, ___, 129 S.Ct. 1411, 1422, 173 L.Ed.2d 251 (2009).

may not be made, however, "unless it affirmatively appears in the record that the court based its sentence on improper information." See Farrow v. United States, 580 F.2d 1339, 1359 (9 Cir. 1978)(en banc). The imposition of a longer sentence than a defendant would have received had he pleaded guilty does not automatically amount to punishment for the defendant's exercising his right to stand trial. See Creed v. Department of Corrections, 330 Fed.Appx. 771, 773 (11 Cir. 2009), citing, Frank v. Blackburn, 646 F.2d 873, 882-83 (5 Cir. 1980), modified on other grounds, 646 F.2d 902 (5 Cir. 1981); Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). The trial court here was not attempting to obtain a guilty plea from Green, as Green contends, but was properly advising him of all possible sentences that could be imposed if he accepted the plea or, instead, immediately proceeded to sentence on the jury verdict and/or trial in his other then-pending criminal. Further, there is nothing in the record here giving rise to an inference of vindictive sentencing. The lengthy sentence imposed was well-supported by the facts of the case and not upon the fact that Green rejected the state's plea offer and elected to maintain his innocence and be tried before a jury. There is no evidence that the trial judge intentionally set out to punish Green for not pleading guilty.

Accordingly, the appellate court's rejection of the claim in the state habeas corpus proceeding is not in conflict with clearly established federal law or based on an unreasonable determination of the facts, and its result should not be disturbed.[11] 28 U.S.C. §2254(d)(1); Williams v. Taylor, 529 U.S. 362 (2000). See also

---

[11]It is noted that the state appellate court in the state habeas corpus proceeding was the same court that had decided Green's direct appeal. By denying the state habeas corpus petition, the court implicitly found that the outcome of the direct appeal proceedings would not have been different if trial counsel had objected to the sentence imposed and/or filed a Rule 3.800 motion.

<u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(*quoting* <u>Early v. Packer</u>, 537 U.S. 3, 7-8 (2002).

### (B) <u>Failure to Investigate</u>

Green claims in **ground two** that he received ineffective assistance of trial counsel, because his lawyer failed to properly investigate and discover evidence within the state's possession (i.e., a pawn ticket with his fingerprint and signature) and such failure deprived him of testifying as a witness in his own behalf. Specifically, Green alleges that after multiple attempts to receive from counsel the discovery in the case, trial counsel provided him with a copy of the pawn shop receipt. He states that the receipt he received from counsel did not include a fingerprint and signature section. Green states that he then telephoned counsel about the evidence and counsel verified the lack of fingerprints and signature and told him that the state could not prove its case beyond a reasonable doubt. Green states that based upon the lack of evidence, he wrote a letter to the prosecutor declaring his innocence and denying that he had pawned the tools and that someone else (Larry Washington) must have used his name.[12]

The record reveals that on the morning of the second day of

---

[12]A copy of Green's letter addressed to the prosecutor in his other unrelated criminal case dated March 5, 2005, can be found at pages 212-16 of Respondent's Appendix to Response to Petition for Writ of Habeas Corpus. The letter mainly relates to issues in his other unrelated criminal case, and briefly states as to this case that he had driven Larry Washington to the pawnshop and that Washington must have given his name when pawning the tools. <u>Id</u> at 214-15. Green denied signing the pawn slip receipt. <u>Id</u>.

the trial, trial counsel received the letter written by Green from the prosecutor and the trial court conducted proceedings pursuant to <u>Richardson v. State</u>, 246 So.2d 771 (Fla. 1971),[13] after which the court found no discovery violation by the late production of the letter. <u>See</u> Transcript of proceedings conducted on March 30, 2005. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 302-07). The statements in the letter conflicted with Green's postarrest statement to the police that he had taken an individual named Larry Washington to the pawn shop to sell his bag of tools and that he had pawned the tools for him because Washington did not have identification. The state indicated during the *Richardson* hearing that it would use the letter to impeach Green if he were to testify at trial. <u>Id</u>. The state also had an original pawn shop receipt which contained Green's fingerprints and signature, which apparently differed from the copy counsel had been provided. <u>Id</u>. Green asserts that based upon counsel's advice, he then decided to waive his right to testify as a witness in his own behalf.

Green maintains that trial counsel's performance was constitutionally ineffective for failing to obtain during discovery proceedings the original pawnshop receipt and advise him of the existence of the receipt. The identical issue was presented in the Rule 3.850 proceeding and in response to the motion, the state addressed the issue pursuant to the applicable *Strickland* standard, although not citing *Strickland*.[14]   <u>See</u> State's Response to

---

[13]In <u>Richardson</u>, the Florida Supreme Court held that where the prosecution violates discovery rules, a trial court should conduct a hearing to determine the fairness and prejudice to the accused of allowing use of the undisclosed evidence at trial.

[14]It is observed that the particular Assistant State Attorney who had been the trial prosecutor, Carolina Corona, was the same Assistant State Attorney who filed a response to the Rule 3.850 motion.

Defendant's Motion for Post Conviction Relief at 2-3. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 294-95). The state concluded that Green was not entitled to postconviction relief on this claim as the claim was meritless, stating as follow:

> In original discovery, the State provided the defense with a copy of the pawn shop receipt that included [Green's] signature and a copy of his fingerprint. The copy that the State had in its possession and the copy that was handed to the defense did not show particular grooves in the fingerprint. However, included in this discovery package was also a Latent Fingerprint Comparison Report authored by Latent Examiner M. Collier which states, "one (1) patent fingerprint appearing on Florida Pawnbroker Transaction Form: Control #424810-112113, has been identified with subject: Christopher J. Green, C.I.N. #617742." A copy of that report is attached hereto as Exhibit 1 and is incorporated by reference. Therefore, [Green] and the defense attorney had in their possession this evidence and were well aware of the evidence the State had against [Green].

> *     *     *

> [Green] claims that if he had known about the fingerprint evidence against him and was made aware that the State actually could prove the charges, he would have never written the letter to the prosecutor where he claims that he was not the one who pawned the property. He claims that the outcome of the case would have been different because he would have written the letter differently or not written it at all and this would have affected [his] decision not to testify. Defense counsel did not have any part in [Green's] decision to write this unsolicited letter to the prosecutor. In fact, when counsel was advised of the letter he was upset at [Green] because he made these inconsistent statements to the prosecutor. The fact that [Green] chose to believe that the State could not prove the charges against him and he voluntarily decided to write this letter to the State giving his version of the events cannot be attributed to the misadvice or ineffective assistance of counsel.

Id. Attached to the response as Exhibit 1 was a copy of the Latent Fingerprint Evaluation/Comparison Report prepared on January 4, 2005, by Latent Examiner M. Collier, indicating that fingerprints appearing on the subject pawn slip matched Green's fingerprints. After reviewing the Rule 3.850 motion, the state's response and the

court files and records, the trial court denied the Rule 3.850 motion, expressly finding the claim meritless and refuted by the record.[15] See Order Denying Motion for Post-Conviction Relief. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 339).

Effective assistance of counsel embraces adequate pretrial investigation. See Strickland v. Washington, 466 U.S. 668, 691 (1984)(stating that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." See also McCoy v. Newsome, 953 F.2d 1252, 1262-63 (11 Cir. 1992) and cases cited therein. Accordingly, "[w]hen a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer has failed to render effective assistance of counsel." Id. at 1263, quoting, House v. Balkcom, 725 F.2d 608, 615, 617-18 (11 Cir.), cert. denied, 469 U.S. 870 (1984). However, counsel's decision to rely on material made available by the state has been held not to fall outside the wide range of professional competence. See generally Brownlee v. Haley, 306 F.3d 1043, 1060 (11 Cir. 2002), citing, Aldrich v. Wainwright, 777 F.2d 630, 636 (11 Cir. 1985). A petitioner's failure to demonstrate that further discovery would have helped the defense clearly bars a finding of prejudice. Id.

It is evident from full review of the record that trial

---

[15]The trial court judge presiding over the trial and sentence proceedings was the same judge who presided over the subject state postconviction proceedings. Where the judge presiding over the trial proceedings is the same judge presiding over the post conviction proceedings, the presumption of correctness afforded the findings of fact of the state court is particularly strong. See May v. Collins, 955 F.2d 299, 314 (5 Cir.), cert. denied, 504 U.S. 901 (1992). As indicated, the trial court's decision in the Rule 3.850 proceeding was affirmed on appeal.

counsel did properly investigate the facts of the case, although he would have preferred additional time to conduct discovery. Even if the copy of the pawn slip received by counsel had not included a fingerprint and signature portion or it was unreadable in part,[16] trial counsel was provided in discovery with the Latent Fingerprint Evaluation/Comparison Report, indicating that Green's fingerprints matched those on the pawn slip receipt. The fact that trial counsel merely claimed a discovery violation as to Green's letter, and did not object to the admission of the pawn slip that included the fingerprint and signature, see Trial Transcript at 145-46, clearly indicates that counsel was aware of the critical evidence. While trial counsel may have advised Green that he was confident that the state could not meet its burden of proof in the case,[17] other than Green's self-serving unsubstantiated allegations in his petition, there is simply no evidence whatever in the record that trial counsel was unaware that the Green's fingerprints matched those on the pawn slip and so advised Green.[18] Moreover, as aptly pointed out

---

[16]See Transcript of proceeding conducted on March 30, 2005, at 3. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 156).

[17]During the *Richardson* hearing, in an attempt to demonstrate that the state's late disclosure of Green's letter resulted in prejudice, trial counsel stated that he had felt very confident that the state could not meet its burden based upon Green's statements to the police and Green's anticipated trial testimony. See Transcript of proceeding conducted on March 30, 2005, at 7. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 160).

[18]Green has not submitted an affidavit from counsel or other reliable evidence supporting his claim. Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11 Cir. 1991)(recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)). See also Ross v. Estelle, 694 F.2d 1008, 1011-12 (5 Cir. 1983). Moreover, bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979); King v. United States, 565 F.2d 356 (5 Cir. 1978); Clayton v. Estelle, 541 F.2d 486 (5 Cir. 1976).

by the state in the Rule 3.850 proceeding, Green had not consulted with trial counsel before writing the letter to the prosecutor. Defense counsel was, therefore, completely taken by surprise by Green's decision to write the unsolicited letter. Green's decision to write the letter which contained statements that were inconsistent with his postarrest statement, which decision ultimately worked to his disadvantage, cannot be attributed to the misadvice or ineffective assistance of counsel. It was Green who sabotaged his own defense and it was his own behavior that resulted in the waiver of his right to testify at trial, if it truly were the case that Green was to be a witness before the discovery of the letter, which is not entirely clear from the record here.

It is also important to note that after the court found no discovery violation and after trial counsel indicated to the court that he would not call Green as a defense witness due to the state's ability to use Green's letter for impeachment, the trial court placed Green under oath and conducted the following colloquy:

| THE COURT: | Mr. Green, sir, you still want to go forward with your demand for speedy trial? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Okay. |
| | You don't want me to continue this case to give your lawyer more time to prepare or anything like that? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | You want to finish this trial now? |
| THE DEFENDANT: | Yes, sir. |

See Transcript of proceeding conducted on March 30, 2005, at 8-9. (Respondent's Appendix to Response to Petition for Writ of Habeas

Corpus at 161-62). Green also told the court that he did not want to discharge counsel. Id. at 9. Green did not advise the court that he had in any way been misled by counsel and that it had been his desire to testify at trial. Green chose not to continue the case to give counsel additional time to investigate the case, affirmatively electing to proceed with the trial, knowing of the state's evidence and that he was not going to testify. While trial counsel did object during the same proceeding to the state's motion to fingerprint Green for the purpose of comparison, the court granted the motion and remarked: "I am sure as an experienced trial lawyer you are, you were expecting that, so it will be granted. He can be fingerprinted." Id. at 11. At the conclusion of the trial, after consultation with counsel, Green advised the court that he decided not to testify in his own behalf. See Trial Transcript at 170-71.

The foregoing record clearly indicates that it was Green who demanded a speedy trial, although counsel had obtained a continuance for additional investigation into the case and could have obtained a continuance during the trial, and Green who persisted on going to trial, although the court gave him the opportunity to withdraw his speedy trial request. Consequently, Green has not demonstrated that trial counsel's performance was deficient. Finally, even if counsel's performance could in any way be deemed deficient, no prejudice has been established. Green has not demonstrated that if he had testified at trial consistent with his postarrest statement that there is a reasonable probability that the outcome of the proceedings would have been different. The defense presented was that Green had no knowledge whatever that the items had been stolen and the state had failed to prove beyond a reasonable doubt that he had such knowledge. See e.g., Trial Transcript at 175-84. As was the prerogative of the jury, it rejected the defense presented, and instead believed the strong

24

evidence admitted by the state and the testimony of the state witnesses.[19] The evidence included testimony from the victim of the crime, the clerk from the pawnshop who testified as to the procedures employed at the store, and an expert in the field of fingerprint comparison who testified that Green's fingerprints matched the fingerprint on the pawnshop receipt. Thus, Green did not receive constitutionally ineffective assistance of trial counsel, as alleged in ground two. See Strickland, supra. See also Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946).

The trial court's determination that Green was not entitled to postconviction relief on this claim of ineffective assistance of trial counsel, which decision was affirmed on appeal, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000). See also Mitchell v. Esparza, 540 U.S. at 16.

### (C) Motion to Suppress

Green claims in **ground three** that his lawyer improperly failed to file a motion to suppress for the purpose of preventing statements made in his letter to the prosecutor from being admitted at trial as impeachment evidence on the basis that the statements had not been voluntarily made. As pointed out above, the letter was an unsolicited letter from Green to the prosecutor in his unrelated case sent shortly before the trial in this case was to commence. The state indicated during the *Richardson* hearing that it would

---

[19]For a thorough summary of the testimony and evidence presented at trial with citations to the trial transcript, see Green's Initial Brief on Direct Appeal at 5-8. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 66-8).

25

only use the letter to impeach Green's testimony if he were called as a defense witness at trial. See Transcript of proceeding conducted on March 30, 2005, at 6. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 159). Green never testified at trial. Accordingly, a motion to suppress was not warranted in that it was unnecessary. Counsel's performance can, therefore, not be considered constitutionally ineffective when he failed to pursue a suppression motion. Counsel need not file motions that he knows to be meritless on the facts and in law. Knowles v. Mirzayance, 129 S.Ct. at 1419-22.

Moreover, contrary to Petitioner, trial counsel did in fact attempt to exclude the admission of the letter, albeit on alternate grounds, arguing that the state committed a discovery violation by producing the letter during the trial. Trial counsel forcefully argued that the letter should not be admissible for any purpose and that the late-disclosure prejudiced the defense and altered the trial strategy. After proceedings pursuant to Richardson, the trial court found no discovery violation. See Transcript of proceedings conducted on March 30, 2005. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 302-07). Green raised the discovery violation issue on direct appeal and again argued that the state had improperly failed to disclose the letter to the defense and such failure resulted in prejudice to the defense. See Initial Brief of Appellant at 17-28. The Florida appellate court rejected the claim as meritless, relying on Florida caselaw. See Green v. State, 943 So.2d 252 (Fla. 3 DCA 2006), citing, Pender v. State, 700 So.2d 664 (Fla. 1997)(holding that state's discovery violation was harmless error where subject photograph was never introduced at trial although witness' testimony was based in part on the photograph); Richardson v. State, 246 So.2d 771 (Fla. 1971); Kiser v. State, 921 So.2d 28 (Fla. 1 DCA 2006)(holding that state's

failure to disclose before trial defendant's oral statement to police was a discovery violation, however, violation was harmless because record demonstrated that defense strategy would not and could not have been materially different had counsel known before trial of the subject oral statement); State v. Rodriquez, 907 So.2d 564 (Fla. 3 DCA 2005)(finding that late disclosure of witnesses in prosecution for first-degree murder resulted in no legally cognizable prejudice to defendant and did not require exclusion of their testimony). Trial counsel's performance was not deficient, as alleged by Green, and he is not entitled to habeas corpus relief on ground three. See Strickland, supra. The state courts' rejection of this claim in the postconviction proceedings is not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings and, therefore, relief must be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000).

### (D) Motion for Mistrial

Green claims in **ground four** that he received ineffective assistance of trial counsel when his lawyer failed to object, request a curative instruction and move for a mistrial when the state failed to call lead Detective Spence as a witness at trial although having indicated during opening statement that the detective would testify. Green essentially wanted to cross-examine Detective Spence in such a manner so as to elicit the statement given to Detective Spence that the tools had belonged to his friend Larry Washington; that he had done Washington a favor by pawning the tools, because Washington had no identification; and he had been unaware that the tools were stolen.

27

Review of the trial transcript indicates that the prosecutor did tell the jury during opening statement that the lead detective, Detective Spence, would testify as to her investigation into the subject crime which included a visit to the pawnshop where she had obtained the pawn slip receipts. See Trial Transcript at 107-08. The prosecutor never mentioned, however, any statement obtained from Green. Id. Regardless of the fact that Green may have been led to believe that the detective was to be called as a state witness and had wanted to cross-examine the detective with regard to his postarrest statement,[20] the defense clearly cannot decide which witnesses the state should call at trial.

Further, Green suffered no prejudice when the state did not call the detective as a witness, because he would not have been permitted during cross-examination to elicit the desired testimony, any inculpatory statements made during the detective's interview. Self-serving statements are not exempted from the hearsay rule or any other exemption or exception, and are thus inadmissible hearsay. See United States v. Ortega, 203 F.3d 675, 682 (9 Cir. 2000)(explaining that "self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are not therefore hearsay, see Fed.R.Evid. 801(d)(2), but the non-self-inculpatory statements are inadmissible hearsay."); United States v. Quansah, 171 Fed.Appx. 51, 52 (9 Cir. 2006). See also Cotton v. State, 763 So.2d 437, 442 (Fla. 4 DCA 2000)(holding that defendant's post-arrest statement to the police was inadmissible hearsay in that it was a self-serving exculpatory statement which lacked reliability and trustworthiness), citing, Fagan v. State, 425 So. 2d 214 (Fla. 4 DCA 1983)(holding that testimony of

---

[20]Trial counsel alluded to Green's statement to the detective during his opening remarks: "The one piece of evidence that's available to the State that they didn't tell you existed exonerates Mr. Green. They know it. They didn't tell you about it." Id. at 113.

arresting officer as to exculpatory statement made by defendant at
time of his arrest was properly excluded as hearsay where defendant
chose not to testify at trial and statement did not fit into
categories of res gestae, statement against penal interest or
admissions of party opponent). If exculpatory statements were
admitted at trial, a defendant would be able "to place his
exculpatory statements 'before the jury without subjecting
[himself] to cross-examination, precisely what the hearsay rule
forbids.'" Ortega, 203 F.3d at 682. (internal quotation omitted).
Further, even if portions of the written statement had been
admitted during the detective's testimony, possibly implicating the
rule of completeness,[21] exclusion of Green's exculpatory statements
would have been proper because the statements still would  have
constituted inadmissible hearsay. See Ortega, 203 F.3d at 682,
citing, United States v. Collicott, 92 F.3d 973, 983 (9 Cir. 1996).

Trial counsel would have been properly restricted from
eliciting the substance of Green's inadmissible and self-serving
statements either during cross-examination of the detective, if
called as a state witness, or during direct examination, if called
as a defense witness to testify with regard to her involvement in
the investigation and questioning of Green. The second day of
trial, the state filed a motion to prevent the defense from
soliciting either directly or indirectly any pretrial self-serving
statements made by Green on the basis that such statements were
inadmissible hearsay. See Motion for Order in Limine. (Respondent's

---

[21]See Fed.R.Evid. 106 (providing that "[w]hen a writing or recorded
statement or part thereof is introduced by a party, an adverse party may require
the introduction at that time of any other part or any other writing or recorded
statement which ought in fairness to be considered contemporaneously with it.");
Fla.Stat. §90.108(1)(providing that  "[w]hen a writing or recorded statement or
part thereof is introduced by a party, an adverse party may require him or her
at that time to introduce any other part or any other writing or recorded
statement that in fairness ought to be considered contemporaneously. An adverse
party is not bound by evidence introduced under this section.")

Appendix to Response to Petition for Writ of Habeas Corpus at 21). The trial court deferred ruling on the motion, but agreed with the state that Green was precluded from admitting his own oral or written statement at trial in that it was hearsay. See Trial Transcript at 119-20. The trial court never ruled on the state's motion, because the interviewing officer, Detective Spence, was never called as a witness at trial.

Of course, Green was not prevented from introducing his denial-he could have testified to the statement himself. He chose not to testify, knowing that he would have been subjected to impeachment based upon his subsequent letter to the prosecutor. It seems obvious that Green mistakenly believes that his statement to Detective Spencer could have been revealed to the jury without subjecting himself to cross-examination, precisely what the hearsay rule forbids. See United States v. Willis, 759 F.2d 1486, 1501 (11 Cir. 1985)(holding that where purpose of eliciting, through cross-examination of government agent, defendant's allegedly exculpatory statement at time of his arrest that he believed only mail was aboard airplane was to prove that defendant had no knowledge of plane's illicit cargo, statement was inadmissible hearsay in defendant's prosecution on drug-related charges). Further, the state did not introduce any allegedly inculpatory hearsay statement by Green; therefore, due process does not require that Green be allowed to present exculpatory hearsay statements. See United States v. Fernandez, 839 F.2d 639, 640 (9 Cir. 1988). Also, Green could have called the detective as a defense witness to testify as to her investigation, and he chose not to do so.

Because Green cannot demonstrate that he suffered prejudice from counsel's alleged deficient performance, he has not shown that he received constitutionally ineffective assistance of counsel

pursuant to *Strickland*. As indicated, the Supreme Court does not require counsel to pursue every nonfrivolous claim or defense regardless of its merit, viability or realistic chance of success. Knowles v. Mirzayance, 129 S.Ct. at 1419-22. Again, the state courts' rejection of this claim in the postconviction proceedings is not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings and, therefore, relief must be denied pursuant to 28 U.S.C. §2254(d). Williams v. Taylor, 529 U.S. 362 (2000).

### (E) Collateral Crime Evidence

Green claims in **ground five** that his lawyer rendered ineffective assistance when he failed to file a motion in limine to exclude the admission of collateral crime evidence at trial (i.e., the burglary of the tools). During the Rule 3.850 proceeding, the state in its well-reasoned response argued that the claim was meritless, stating in relevant part as follows:

> The State was required to prove as an element of the offense that the property was in fact stolen and not given to somebody with permission.[22] This essential element was satisfied by the questioning of the victim and witness with whether they ever gave anybody, including Christopher Green, permission to use those tools. The State never accused [Green] of having committed the burglary and the Court specifically instructed the jury on more than one occasion that [Green] was not accused of burglarizing the victims.[23] Furthermore, defense counsel objected each time this evidence was introduced and asked the Court for a curative instruction....This essential evidence of the burglary never became a feature of the trial.

---

[22]Green was charged with dealing in stolen property in violation of Fla.Stat. §812.019(1) (West 2000)("Any person who traffics in, or endeavors to traffic in, property that he or she knows or should know was stolen shall be guilty of a felony of the second degree...").

[23]See e.g., Trial Transcript at 108-112, 124-28, 184-85, 188, 190-93.

> Had the defense filed a motion in limine to preclude the State from introducing evidence of a burglary where the tools in question were stolen, the probable outcome would have been the same. Contemporaneous objections were made each time the State sought to introduce this evidence, therefore, this issue was preserved as it would have been if there had been a motion in limine filed. The State is entitled to introduce evidence that the goods were stolen. The Court[']s ruling would have likely been the same as its ruling when the questions were asked of the witnesses. [Green] is unable to prove that counsel was ineffective nor can he prove that he was prejudiced by counsel's failure to file this motion.

See State's Response to Defendant's Motion for Post Conviction Relief at 5-6. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 297-98). The postconviction court agreed with the state and found the claim meritless.[24] See Order Denying Motion for Post-Conviction Relief. (Respondent's Appendix to Response to Petition for Writ of Habeas Corpus at 339). The ruling was affirmed by the state appellate court. Green v. State, 3 So.3d 1262 (Fla. 3 DCA 2009)(table).

Claim five is clearly without merit, as indicated by the trial transcript. Trial counsel repeatedly objected to any possible comment by the prosecutor or testimony from witnesses indicating that Green was guilty of the non-charged crime of burglary. See Trial Transcript at 108-112, 124-28, 184-85, 188, 190-93. Trial counsel's objections resulted in instructions to the jury that Green had not been charged with the offense of burglary and that the state was not saying that Green had been the person who had committed the burglary. Id. It is generally presumed that jurors follow their instructions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987). Accordingly, Green is not entitled to habeas corpus relief on ground five, as properly determined by the state

---

[24]As will be remembered, the trial court judge presiding over the trial and sentence proceedings was the same judge who presided over the subject state postconviction proceedings.

courts. See 28 U.S.C. §2254(d); Williams v. Taylor, 529 U.S. 362 (2000). See also Mitchell v. Esparza, 540 U.S. at 16, *quoting* Early v. Packer, 537 U.S. at 7-8.

### VII. Conclusion

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 15th day of July, 2010.

_____

UNITED STATES MAGISTRATE JUDGE

cc: Christopher Green, Pro Se
    DC# M22501
    Wakulla Correctional Institution
    110 Melaleuca Drive
    Crawfordville, FL 32327

    Lunar C. Alvey, AAG
    Department of Legal Affairs
    444 Brickell Avenue
    Suite 650
    Miami, FL 33131